Dolores M. TERRELL, Appellant,

v.

Willie S. TERRELL, Appellee.

No. 16298.

Court of Civil Appeals of Texas, San Antonio.

Nov. 26, 1980.

Rehearing Denied Dec. 31, 1980.

Keith M. Baker, San Antonio, for appellant.

Sam H. Burris, Burris & Burris, Alice, for appellee.

## OPINION

CADENA, Chief Justice.

Dolores M. Terrell, plaintiff, appeals from a judgment denying her claim for partition of military retirement benefits which she alleges were not disposed of in the divorce decree entered in 1973 terminating the marriage between her and defendant, Willie S. Terrell.

Defendant retired in 1964, on the basis of twenty years of service, and the parties stipulated that eighteen of those years were served while plaintiff and defendant were husband and wife. At the time of the divorce, January 17, 1973, defendant had been receiving retirement benefits for more than eight years.

The present suit was filed by plaintiff in 1978.

We consider first the question of whether plaintiff's suit is barred by limitations.

Defendant's claim that recovery is barred because of limitations is based on *Shaw v. Corcoran*, 570 S.W.2d 96 (Tex.Civ.App.— Austin 1978, no writ). In that case the parties were divorced in 1967 and the decree made no mention of the retirement benefits. Shaw retired from the Navy and began receiving retirement benefits in November, 1970. After he refused to pay to his former wife any part of the pension, she filed suit in November, 1970. Shaw filed an answer and the suit was dismissed by his ex-wife in May, 1975. She then filed another suit for partition in May, 1977, and the Austin Court of Civil Appeals held that her claim was barred by limitations.

The result in *Shaw* is clearly based on the theory that the ex-husband had repudiated the claim of his ex-wife in the "autumn of 1970," and that such repudiation "set in operation the statute of limitations." 570 S.W.2d at 98.

In *Cruse v. Cruse*, 572 S.W.2d 68 (Tex. Civ.App.—Houston [14th Dist.] 1978, writ ref'd, n. r. e.), the divorce decree, dated February 8, 1971, awarded the wife a specified fractional interest in the pension benefits. The husband retired and began receiving retirement benefits in October, 1971. Two months later, in December, the wife sought to hold him in contempt for his failure to pay to her the portion of the pension benefits awarded to her by the divorce decree. These contempt proceedings were dismissed by the trial court in February, 1972, and the wife's subsequent motion for judgment nunc pro tunc, apparently seeking to have the divorce decree modified to include a provision ordering the husband to pay a portion of the pension to the wife, was denied in May, 1972. In April, 1977, more than six years after the divorce and more than five years after the husband began receiving the pension benefits, the wife filed suit seeking an accounting and partition of all the retirement benefits received by the husband since October, 1971. The trial court held that her claim for benefits received by the husband more than two years prior to the filing of the 1977 suit was barred by limitations, and granted relief only as to the benefits received by the husband during the two years preceding the filing of the 1977 suit. The appellate court reversed, granting the plaintiff judgment for her share in all of the retirement benefits received by the husband.

In *Cruse* the Houston Court of Civil Appeals distinguished *Shaw* by pointing out that in *Shaw* there was evidence of a repudiation by the husband of the wife's interest more than five years before the wife filed her suit. The *Cruse* opinion rejected the contention that limitations began to run when the wife learned that the husband was receiving benefits and keeping the entire proceeds.

We consider *Cruse* to be controlling in this case on the question of limitations since here there is no evidence of a repudiation of plaintiff's interest by defendant. In this case defendant testified that he had not communicated with plaintiff since the divorce.

The trial court's conclusion that the divorce decree set aside certain community assets to plaintiff and that all other assets "including the Navy pension" were awarded to defendant cannot stand. The portions of the divorce decree concerning community property read as follows:

The Court finds that no community property was accumulated during the marriage other than personal effects, which should be awarded to the person having possession.

It is therefore

ORDERED, ADJUDGED and DECREED by the Court that each party hereto take as his or her sole and separate property all such property as is presently in his or her possession.

The divorce decree was not introduced in evidence. However, the provisions of the decree concerning the division of property were set out verbatim in defendant's answer as supporting his plea that the divorce decree awarded the pension benefits to him. Under these circumstances, the relevant provisions of the decree were admitted by defendant, relieving plaintiff of the burden of proving such provisions.

It is clear that the divorce decree made no mention of the retirement benefits. We reject defendant's contention that the retirement benefits must be considered as "personal effects" in his possession, because, at the time of the divorce, plaintiff was aware that defendant was receiving such benefits. Since the decree did not dispose of this community asset, upon dissolution of the marriage the parties became tenants in common with respect to such benefits and plaintiff is entitled to partition. *Busby v. Busby*, 457 S.W.2d 551 (Tex.1970); *Wilson v. Wilson*, 507 S.W.2d 916 (Tex.Civ.App.— Houston [1st Dist.] 1974, no writ).

■ Defendant contends that the judgment below must be affirmed because the trial court found that plaintiff, in the divorce suit, had repudiated or abandoned her claim to the pension benefits. This finding by the trial court is based on defendant's testimony that plaintiff had told him that she wanted nothing from him and that all she wanted was "out" of the marriage, and that at the divorce hearing, which plaintiff did not attend, her attorney had so informed the court. The judgment in the divorce case contains no finding of an abandonment by plaintiff of her claim to any portion of the community estate. The divorce judgment, by awarding to plaintiff some of the community assets, necessarily is an adjudication that there was no such repudiation. In any event, the statement, "I want nothing from him," cannot be reasonably interpreted as meaning "He can have what is mine."

The trial court concluded that plaintiff failed to prove the allegations contained in her petition and offered no evidence concerning the amount of the pension being received by defendant, "or the amount of money she sought to recover." In one of its conclusions of law, the trial court found that plaintiff offered no proof on which a judgment might be based.

■ The parties stipulated that defendant retired after serving in the Navy for twenty years and that eighteen of such twenty years had been served while plaintiff and defendant were husband and wife. It is, therefore, established that the community interest in the retirement benefits is represented by the fraction ¹⁸⁄₂₀, so that plaintiff's interest in such community asset is a 45% interest. The stipulated facts establish as a matter of law that plaintiff is entitled to 45% of the benefits which defendant will receive in the future, so that as to such future payments the evidence concerning plaintiff's right is conclusive. We take judicial notice of the fact that the amount paid to military retirees does not remain constant but fluctuates from time to time, so that, as to such future payments, the preferable form of judgment is one directing the recipient of such benefits to pay a specified percentage of the amount received by him. The record furnishes no basis for denying plaintiff such a judgment.

■ It is true that no evidence was offered concerning the amount of the payments received by defendant in the past. However, it is apparent from the record that, because of confusion concerning the nature of the hearing resulting in the judgment appealed from, the case has not been fully developed.

After the present suit had been filed, plaintiff, on October 24, 1978, filed a motion that defendant be required to produce certain financial records, including those concerning the amounts he had received as retirement benefits since the date of the divorce. This motion was set for hearing on November 17. On November 14 defendant filed written objections to the motion to produce his records, contending that the question of whether or not plaintiff's suit was barred by limitations should be disposed of before the court ruled on the motion to produce "because, if the plea [of limitations] is sustained, there will be no necessity for the production of records" by defendant. This pleading closed with a prayer that, at the November 17 hearing, the court "first take up the matter of the statute of limitations before any Motion for Production and ... that at such hearing, the plea be sustained and this case be dismissed."

At the November 17 hearing plaintiff's counsel announced to the trial court that the parties were present on plaintiff's motion to produce the documents "to find out how much he received in retirement pay from the date of the divorce up to this time." He then referred to defendant's answer to the motion to produce, asserting that such answer "goes to the merits of the case," since it raised the question of limitations and was, in his opinion, in reality a motion for summary judgment. Defendant's attorney said that it was defendant's contention that the suit was barred by limitations.

Defendant's counsel then told the court that if plaintiff considered the response to be a motion for summary judgment and was not ready "on this portion," defendant was willing "for him to reset this matter." He pointed out that if the plea of limitations was heard then, or at some time prior to trial, there would be no need for defendant to produce any records.

In answer to a question from the bench, defendant said he was announcing ready "on the urging of my plea." The judge said he wanted it to be a final hearing and did not want to try the case "piecemeal." Plaintiff's counsel pointed out that he was not prepared for a hearing on defendant's motion to dismiss. The court then asked if plaintiff had asked for the setting, and counsel for defendant replied that plaintiff had only asked for a hearing on his motion to produce documents, and that such hearing had been set for November 17. After plaintiff's attorney asked for time to reply to defendant's motion to dismiss, the court said, "we'd better set it for eleven o'clock" on December 15.

On December 6 plaintiff filed her answer to defendant's motion to dismiss. At the beginning of the December 15 hearing counsel for plaintiff announced to the court that he had just been handed the information which he sought to obtain by the motion to produce, and stated he "imagined" that he had been furnished all the information he needed, although he had not had time to examine it. He then requested that his motion to produce be "dropped," since it appeared that defendant had "complied with that."

The trial judge then asked, "What do we have now?" Counsel for defendant announced that he was ready for trial. The trial court asked, "Was it set for trial?", whereupon counsel for defendant stated that on November 15 the court announced that it was not going to hear the case piecemeal and had set it for trial on December 15.

Plaintiff's counsel stated that he understood that the December 15 hearing involved only plaintiff's motion to produce and defendant's motion to dismiss, and that he did not understand that the case was set for trial on December 15. Counsel for plaintiff then dictated a motion for continuance to the court reporter, stating, among other things, that the delay was required so that his client, who lived in another city, could be present to testify. The trial court overruled the motion for continuance.

The record reflects a substantial basis for confusion on the part of plaintiff's attorney. Under the circumstances, having concluded that the record reflects reversible error, we believe that the interests of justice require that the judgment below be reversed and the cause be remanded for a new trial so that it may be fully developed.

The judgment of the trial court is reversed and the cause is remanded for a new trial.